Michael P. West, Esq., SBN 172478
**CLARK HILL LLP**
One America Plaza
600 West Broadway, Suite 500
San Diego, CA 92101
Telephone:   (619) 557-0404
Facsimile:    (619) 557-0460
MWest@ClarkHill.com

Attorneys for Defendant
HAWTHORN SENIOR LIVING, LLC

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – EASTERN DIVISION

| | |
|---|---|
| BERT L. CASAGRANDE, by and through his Successor in Interest, Patricia M. Levenda, PATRICIA M. LEVENDA, individually,, | Case No. |
| Plaintiffs, | **DEFENDANT HAWTHORN SENIOR LIVING, LLC'S NOTICE OF REMOVAL OF CIVIL ACTION** |
| v. | |
| HAWTHORN SENIOR LIVING, LLC dba The Palms at La Quinta; and Does 1 through 200, inclusive, | |
| Defendants. | |
| JAMES CASAGRANDE, ROBERT CASAGRANDE, MARILEE CASAGRANDE-KING | |
| Nominal Defendants. | |

COMES NOW, Defendant HAWTHORN SENIOR LIVING, LLC ("Defendant" or "Covered Person"), by and through their undersigned counsel, and hereby removes this action from the Superior Court of the State of California, County of Riverside, to the United States District Court for the Central District of California, Eastern Division, based on an intervening change in the law pursuant to 28 U.S.C. § 1446(b)(3), and pursuant to 28 U.S.C.A. §§ 1441 and 1446, while reserving all defenses and objections

1

NOTICE OF REMOVAL

to venue based on 42 U.S.C.A § 247d-6d(e)(1), and state as follows:

## I.   STATEMENT OF CASE AND BASIS FOR REMOVAL

1.     This action was originally filed in the Superior Court of the County of Riverside, California as Case No. PSC2003000. (Exhibit A, Complaint).

2.     Plaintiffs filed the First Amended Complaint on July 21, 2020 naming James Casagrande, Robert Casagrande, and Marilee Casagrande-King as nominal defendants. (Exhibit B, Summons and First Amended Complaint).[1]

3.     On January 8, 2021, the Secretary of the Department of Health and Human Services ("HHS") issued new controlling authority (hereinafter "AO 21-01") confirming unequivocally that: 1) the PREP Act is invoked by allegations like those in the First Amended Complaint, including alleged inaction or failure to act; 2) the PREP Act is a "Complete Preemption" Statute which confers federal question removal jurisdiction under 28 U.S.C. § 1441(a); and 3) federal jurisdiction is separately conferred in such cases under the doctrine articulated by the United States Supreme Court in *Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg*., 545 U.S. 308 (2005), because "ordaining the metes and bounds of PREP Act protection in the context of a national health emergency necessarily means that **the case belongs in federal court**." (emphasis added).[2]

4.     AO 21-01 is binding on this court, as the HHS Secretary has now incorporated all HHS Advisory Opinions pertaining to COVID-19 into the PREP Act's implementing Declaration itself, and proclaimed that the Declaration "must" be

---

[1]     These nominal defendants were added as heirs of the decedent and there is no allegation that they were involved or share any liability with removing defendant. Therefore, they are not required to join in the petition. "[N]ominal defendants, those 'against whom no real relief is sought,' need not join in the petition. *Thorn v. Amalgamated Transit Union* (8th Cir. 2002) 305 F.3d 826, 833.

[2]     *The Office of the General Counsel, Secretary of the Department of Health and Human Services,* Advisory Opinion 21-01 On the Public Readiness And Emergency Preparedness Act Scope of Preemption Provision, https://www.hhs.gov/guidance/document/advisory-opinion-21-01-public-readiness-and-emergency-preparedness-act (issued January 8, 2021).

construed in accordance with them. *See* Fourth Amendment to the Declaration Under the Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID-19 and Republication of the Declaration, 85 Fed. Reg. 79190 (Dec. 9, 2020) (the "Fourth Amendment" or "Amendment"). As such, the HHS Advisory Opinions are no longer "advisory," as they now have the same "controlling weight" as the Declaration and the PREP Act itself.  Where Congress has expressly delegated interpretative authority to an agency, that agency's interpretative proclamations are controlling on the federal courts. *See Chevron, U.S.A., Inc. v. NRDC, Inc.*, 467 U.S. 837, 843-44 (1984). To avoid any doubt on this point, the Secretary amended the Declaration for the fifth time on January 28, 2021, confirming again in the Declaration itself that the PREP Act is a complete preemption statute.[3]  Congress has reinforced the Secretary's ultimate authority over these matters concerning the PREP Act, and warns that "[n]o court . . . shall have subject matter jurisdiction to review, whether by mandamus or otherwise, any action by the Secretary under [the PREP Act.]" 42 U.S.C. § 247d-6d(b)(1), (4) & (7).

5.    Based on this new, intervening, and controlling authority from HHS, Defendant hereby removes this case to the United States District Court for the Eastern District of California. This Notice of Removal is timely because it is filed within thirty (30) days from the issuance of AO 21-01, which was issued January 8, 2021. *See, Rea v. Michael's Stores, Inc.*, 742 F.3d 1234, 1238 (9th Cir. 2014) (finding that the defendant had thirty (30) days to file a successive removal petition following a relevant change in law; 28 U.S.C. § 1446(b)(3) ("[I]f the case stated by initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion,

---

[3]    *See* Fifth Amendment to the Declaration Under the Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID-19 and Republication of the Declaration, (Jan. 28, 2021).

3
NOTICE OF REMOVAL

order, or other paper from which it may first be ascertained that the case is one which is or has become removable.")

6.     A relevant change in the law justifying removal has occurred because at the time of the filing of the First Amended Complaint, the law was undeveloped as to how the PREP Act is triggered, and specifically whether the PREP Act was a complete preemption statute. Since then, HHS has issued authority that, pursuant to the Declaration, courts must use to resolve these questions, including AO 21-01, which confirms unequivocally **_for the first time_** that the PREP Act **_is a complete preemption statute_**.  Thus, the clock on the 30-day requirements began ticking on January 8, 2021.

7.     This new authority arrives on the heels of other HHS authorities that have provided additional, helpful guidance to the courts in construing the PREP Act.  For example, Advisory Opinion 20-04 confirms that any individual or organization can potentially be a program planner and receive PREP Act coverage – "even grocery stores, universities, private businesses, places of worship, and private transportation providers."[4] HHS issued separate guidance letters specifically confirming that senior living communities, such as Defendant and other residential care facilities for the elderly (RCFEs), are program planners or qualified persons under the PREP Act when they administer or use diagnostic testing and other covered countermeasures.[5]

8.     Subsequently, the Fourth Amendment made "explicit that there can be situations where **_not_** administering a covered countermeasure to a particular individual can fall within the PREP Act and this Declaration's liability protections," as discussed more fully below, and also incorporated all HHS Advisory Opinions into the Declaration itself, thus giving them controlling weight.  85 Fed. Reg. 79190 (emphasis

---

[4]     HHS Advisory Opinion 20-04, https://www.hhs.gov/sites/default/files/advisory-opinion-20-04-hhs-ogc-publicreadiness-emergency-preparedness-act.pdf ("AO 20-04")

[5]     *See* HHS Guidance Aug. 31, 2020,

 https://www.hhs.gov/guidance/sites/default/files/hhs-guidance-documents/prep-act-coverage-for-screening-in-congregate-settings.pdf

NOTICE OF REMOVAL

added).  Even after AO 21-01 was issued on January 8th, the Secretary again amended the Declaration with the Fifth Amendment on January 28, 2021, stating "[t]he ***plain language of the PREP Act makes clear that there is complete preemption of state law***."[6]

9.    In addition to these HHS authorities, the U.S. Department of Justice ("DOJ") filed a Statement of Interest ("SOI") of the United States in *Bolton v. Gallatin Center for Rehabilitation & Healing, LLC*, No. 3:30-cv-00683 (M.D. Tenn. Jan. 19, 2021) at Dkt. No 35, which constitutes the official position of the United States' interest in the enforcement of the PREP Act providing, *inter alia*, that:

a.  The PREP Act is crucial to the "whole-of-nation response" to public health emergencies. *Id.* at 1–2. This response depends on the cooperation among private-sector partners and state and local officials across the nation and that "sweeping" immunity was granted to encourage such cooperation. *Id.* at 2.

b.  Federal jurisdiction is proper since the PREP Act's exclusive federal cause of action creates federal question jurisdiction. *Id.* at 3.

c.  PREP Act immunity for all federal and state law claims and a sole exception to immunity claims process makes the PREP Act a complete preemption statute. *Id.* at 7–8.

d.  It is the nature of a complaint that determines complete preemption, not the stated claims. *Id.* at 6.

e.  *Maglioli* and its progeny's interpretations of the PREP Act's complete preemptive effect are incorrect and that their holdings should be limited to their facts. *Id.* at 10–12.

---

[6]  *See* Fifth Amendment to the Declaration Under the Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID-19 and Republication of the Declaration, (Jan. 28, 2021).

NOTICE OF REMOVAL

10.     The DOJ's SOI commenting on the scope of a federal court's jurisdiction is of "considerable interest" to the courts. *See Republic of Austria v. Altmann*, 541 U.S. 677, 701 (2004); *see also Garb v. Republic of Poland*, 440 F.3d 579, 584 (2d Cir. 2006).

11.     Most recently, the Western Division considered a case with similar facts and issued a 17-page tentative ruling denying the plaintiffs' motion to remand and granting the defendants' motion to dismiss.[7] Specifically, Judge Selna held that "[t]he acts and omissions alleged by Plaintiffs appear almost verbatim in the January 8, 2021 Advisory Opinion" and that accordingly, the PREP Act applied to the plaintiffs' claims. *Id*. at 14. This Court concluded that "because the OGC stated [in the January 8, 2021 Advisory Opinion] that the PREP Act is a complete preemption statute . . . an adequate basis for federal question jurisdiction exists." *Id*.

12.     To be clear, while all of these authorities are important and must be read together, it is AO 21-01 that is the intervening authority for this removal petition, as it provided the first official confirmation from the Secretary that the PREP Act is a complete preemption statute, which was subsequently confirmed in the Fifth Amendment to the Declaration on January 28, 2021

13.     Removal to the United States District Court for the Central District of California, Eastern Division, is proper because the Complaint was filed in the Superior Court of the State of California for the County of Riverside, which is located within the jurisdiction of this District. *See* 28 U.S.C. § 1441(a) and 28 U.S.C. § 84(c)(2).

14.     Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being served on Plaintiffs, and a copy is being filed with the Clerk of the Court for the Superior Court of the State of California for the County of Riverside.

---

[7]     *See Garcia v. Welltower OpCo Group LLC*, No. 8:20-cv-02250-JVS-KESx (C.D. Cal), https://www.cacd.uscourts.gov/honorable-james-v-selna#tentativerulings.

NOTICE OF REMOVAL

## II.    FACTUAL ALLEGATIONS IN THE COMPLAINT

15.    Bert Casagrande ("Mr. Casagrande"), was a resident at The Palms at La Quinta ("The Palms" or "The Facility"), a Residential Care Facility for the Elderly located in Riverside, California. (*See* Exhibit B at ¶ 1.)

16.    The Palms at La Quinta was subject to the requirements of federal and state law governing the operation of assisted living  and residential care facilities for the elderly operating in the State of California. (*See* Exhibit B at ¶ 6.)

17.    In early 2020, the COVID-19 pandemic began to spread throughout the country, including the State of California.[8]

18.    In response to the rising number of COVID-19 cases in California, Governor Gavin Newsom declared a state of emergency on March 4, 2020 through Executive Order N-27-20.[9]

19.    Among other reasons, a state of emergency was declared "to make additional resources available, formalize emergency actions already underway across multiple state agencies and departments, and help the state prepare for broader spread of COVID-19."[10]

20.    The state of emergency declaration included "provisions that protect consumers against price gouging, allow for health care workers to come from out of state to assist at health care facilities, and give health care facilities the flexibility to plan and adapt to accommodate incoming patients." *Id.*

21.    As of the time of this filing, California remains in a state of emergency. *See Id.*

---

[8]    *See* WHO Director-General's Opening Remarks at the Media Briefing on COVID-19 (Mar. 11, 2020), https://www.who.int/dg/speeches/detail/who-director-general-s-opening-remarks-at-the-mediabriefing-on-covid-19---11-march-2020.

[9] *See* Proclamation of a State of Emergency (Mar. 4, 2020) https://www.gov.ca.gov/2020/03/04/governor-newsom-declares-state-of-emergency-to-help-state-prepare-for-broader-spread-of-covid-19/

[10]    *Id.*

NOTICE OF REMOVAL

22.     Plaintiffs allege that "[w]hile under the care and treatment of The Palms, Mr. Casagrande developed and passed away from COVID-19, as a result of the Palms' failure to implement policies and procedures relating to infectious diseases. The Palms' employees failed to wear PPE on multiple occasions when caring for Mr. Casagrande, which caused him to contract COVID-19, and caused his untimely death." (*See* Exhibit B, ¶ 13.)

23.     Specifically, plaintiffs assert staff members at The Palms failed to wear masks when entering Mr. Casagrande's room on April 17, 2020, April 18, 2020, and April 19, 2020. (*See* Exhibit C, Plaintiffs' Verified Response to Special Interrogatories, Response to Special Interrogatory Nos. 6, 7; *See also* Exhibit D, Plaintiffs' Case Management Statement filed on December 10, 2020, Section 4(b).)[11, 12]

24.     Plaintiffs further assert that the only infection developed by Mr. Casagrande as a result of the lack of care provided by Defendant was COVID-19. (*See* Exhibit C, Response to Special Interrogatory No. 9.)

25.     Mr. Casagrande passed away on May 7, 2020. (*See* Exhibit B, ¶¶ 13, 39; Exhibit D, Section 4(b).)

## III.     REMOVAL IS PROPER BECAUSE A DEVELOPMENT IN THE LAW CREATED NEW AUTHORITY FOR REMOVAL.

26.     Pursuant to 28 U.S.C. § 1446(b)(3), a notice of removal may be filed within thirty days after the defendant receives "a copy of an amended pleading,

---

[11] The Court may rely on "documents exchanged in the case by the parties" to determine issues of removability. *See Lovern v. General Motors Corp.* (4th Cir. 1997) 121 F.3d 160, 162. Furthermore, courts have held that "other papers" that may be considered for the purpose of determining issues of removability include documents that are not required to be "filed", including, but not limited to, discovery responses. (*Berera v. Mesa Med. Group, PLLC* (6th Cir. 2015) 779 F3d 352, 365-366; *see also* 28 U.S.C. § 1446(c)(3)(A)); deposition testimony (*Huffman v. Saul Holdings Ltd. Partnership* (10th Cir. 1999) 194 F3d 1072, 1078; *see also S.W.S. Erectors, Inc. v. Infax, Inc.* (5th Cir. 1996) 72 F3d 489, 494); and demand letters (*Kuxhausen v. BMW Fin'l Services NA LLC* (9th Cir. 2013) 707 F3d 1136, 1140).

[12] Pursuant to *Federal Rule of Evidence* 201, this Court may take judicial notice of proceedings in other courts that "have a direct relation to the matters at issue." *U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992)

NOTICE OF REMOVAL

motion, order, or other paper from which it may first be ascertained that the case is one which is or has become removable."

27.    In *Rea v. Michael's Stores, Inc.*, the defendants' original removal petition was denied when the district court found that the requisite amount in controversy was not met for plaintiffs' class action due to an express disclaimer. *See* 742 F.3d 1234, 1236 (9th Cir. 2014). However, following a Supreme Court decision pertaining to such disclaimers, the Ninth Circuit found that successive removal was appropriate because the change in the law was a "relevant change in circumstances . . . justifying a reconsideration of a successive, good faith petition for removal." *Id.* at 1238. The Court stated that "under the controlling law at the time defendant received the complaint, it did not 'affirmatively reveal[ ] on its face the facts necessary for federal court jurisdiction,' so the initial 30–day removal period was never triggered." *Id.* (quoting *Harris v. Bankers Life & Cas. Co*., 425 F.3d 689, 691–92 (9th Cir.2005) The Court further stated that, "as long as the complaint or 'an amended pleading, motion, order or other paper' does not reveal that the case is removable, the 30–day time period never starts to run and the defendant may remove at any time." *Id.*

28.    In *Landry¸* defendants removed to federal court after a Supreme Court case clarified the preemptive power of the National Banking Act. In that case, the Court held that a "clear statement of new law" in the form of a Supreme Court decision served as the basis for removal jurisdiction and, accordingly, plaintiff's original Petition became removable under federal question jurisdiction on the date of the decision. *Landry v. Cross Country Bank* (S.D. Tex. 2003) 431 F.Supp.2d 682, 686.

29.    Likewise, in *Reyes v. Dollar Tree Stores, Inc.*, the plaintiffs argued that a class certification order expanding the proposed class definition did not create sufficient new grounds for removal. 781 F. 3d 1185, 1189 (9th Cir. 2015). However, the Ninth Circuit held that "because the first remand was 'on grounds that subsequently became incorrect,' the successive removal was permissible."  *Id.* (quoting *Rea*, 742 F. 3d at 1238).

NOTICE OF REMOVAL

261997029.v1

1
2
3
4
5
6
7
8
9
10
11
12
13
14

30.     Indeed, since the *Rea* decision was issued, courts in the Ninth Circuit have routinely held that successive removal is permitted following an intervening change in the law. *See, e.g., Fritsch v. Swift Transp. Co. of Ariz.,* LLC, 899 F.3d 785, 789 (9th Cir. 2018) ("A defendant can file a successive removal notice within 30 days after a change in law that revealed the facts necessary for federal court jurisdiction"); *Taylor v. Cox Communs. Cal., LLC*, 673 Fed. Appx. 734, 735 (9th Cir. 2016) (same); *Goodman v. Wells Fargo Bank, N.A.*, 602 Fed. Appx. 681, 682 (9th Cir. 2015) (finding that an intervening Ninth Circuit decision clarifying the citizenship of national banks was a "relevant change in circumstances" justifying successive removal under 28 U.S.C. § 1446(b)(3)); *Skau v. JBS Carriers*, No. C18-00681-RAJ, 2018 U.S. Dist. LEXIS 216853, at *4-5 (W.D. Wash. Dec. 27, 2018) (denying motion for remand following successive removal due to intervening change in law concerning the applicability of attorneys' fees to the amount in controversy requirement in a diversity case).

15
16
17
18
19
20
21
22
23

31.     Most recently, in a similar case involving claims against a post-acute long-term care facility in the Superior Court of Los Angeles, the defendants filed a second removal notice in the District Court following the Fourth Amendment, in which the Secretary stated for the first time that the *Grable* doctrine provided a basis for federal jurisdiction. This removal was made after supporting comments by Judge Fujie in the Superior Court of Los Angeles who suggested that, following the Fourth Amendment, "[i]f the Superior Court does not have jurisdiction, someone does." *See Martin v. Serrano Post Acute LLC*, No. 2:21-cv-00187-FMO-AGR (C.D. Cal), Dkt. No. 1 at ¶ 13.

24
25
26
27
28

32.     Here, the new authority from HHS deeming the PREP Act a complete preemption statute creates a compelling change in the law supporting removal. *Rea*, 742 F. 3d at 1238. Further, AO 21-01 provides controlling authority that the Secretary has mandated courts "must" use to resolve jurisdictional disputes involving "nursing homes and other healthcare facilities, where patients or their estates allege that patients

contracted COVID-19 because the facility, among other things, failed to provide its staff with personal protective equipment ("PPE"), failed to teach the staff how to properly use that equipment, or failed to ensure that its staff used the PPE that it had been given." *See* AO 21-01.

33.    Through AO 21-01, the Secretary explains for the first time that  (1) the PREP Act "extends immunity to ***anything*** 'relating to' the administration of a covered countermeasure" ***including the non-use*** of covered countermeasures; (2) when the PREP Act is triggered, the doctrine of ***complete preemption*** attaches, which serves as a "basis for federal question removal under 28 U.S.C. § 1441(a);" and (3) "the secretarial determination provides the underlying basis for invoking the *Grable* doctrine with respect to all claims for loss caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure." *See* AO 21-01 (emphasis added).

34.    Here, at the time plaintiffs filed the First Amended Complaint, the case was not removable based on the state of the law regarding the PREP Act. *See Rea, supra¸* at 1238. This Court should apply the reasoning from *Landry* and the successive removal cases. For the reasons set forth above, here plaintiffs' First Amended Complaint became removable under federal question jurisdiction on January 8, 2021.

## IV.    FEDERAL JURISDICTION LIES IN THIS COURT BECAUSE THE PREP ACT COMPLETELY PREEMPTS PLAINIFFS' CLAIMS.

35.    AO 21-01 unequivocally states that "[t]he PREP Act is a 'Complete Preemption' Statute," because it establishes both a federal and administrative cause of action as the only viable claim, and vests exclusive jurisdiction in federal court."

36.    The PREP Act is not only invoked by Plaintiffs' factual allegations, it completely preempts "all claims of loss," whether statutory or common law claims, that are "caused by, arising out of, relating to, or resulting from the administration or use of a covered countermeasure." 42 U.S.C. § 247d–6d(a)(1)&(b). "Loss" broadly includes "any type of loss." *Id.* Indeed, no state may establish "any provision of law"

11

261997029.v1

that is different from, or is in conflict with, any requirement of the PREP Act. *Id.* at §
(b)(8).

37.　In other words, during the designated period of time of the Secretary's
Declaration, a claimant may not pursue ordinary state law claims under statutory or
common law to achieve a different result or more monetary damages than provided by
the PREP Act.  Here, because the PREP Act is invoked by virtue of Defendant being a
Covered Person who engaged in the use and non-use Covered Countermeasures,
complete preemption applies. Accordingly, jurisdiction must lie in this Court.

### a. Defendant Is a Covered Person Who Engaged In Covered Countermeasures.

38.　The PREP Act completely preempts state law claims and affords
immunity protection from liability and suit to "covered persons" who engaged in
"recommended activities" by using "covered countermeasures" during times of
national emergency, such as COVID-19.

39.　Defendant in this action is a "Covered Person" under the PREP Act as its
facility located at The Palms La Quinta is a residential care facility for the elderly
licensed by the State of California.  *See* 42 U.S.C. § 247d-6d(i)(2); Advisory Opinion
on the PREP Act, *available at* https://www.hhs.gov/sites/default/files/prep-act-
advisory-opinion-april-14-2020.pdf; AO 20-04.

40.　Further, Defendant is a "Covered Person" because it meets the
requirements of a "program planner" of countermeasures under the PREP Act and is a
"qualified person[s] who prescribed, administered or dispensed" a countermeasure
under the PREP Act.[13]

41.　Specifically, Defendant was acting as a "program planner" that supervised
the procedures relating to infectious diseases, specifically the infection control

---

[13]　*See* Advisory Opinion on the PREP Act, *available at*
https://www.hhs.gov/sites/default/files/prep-act-advisory-opinion-april-14-2020.pdf.

NOTICE OF REMOVAL

261997029.v1

program, under which FDA-approved PPE, such as N95 respirators, face shields and masks, gloves, and gowns, as well as diagnostic countermeasures, sanitizers and disinfectants, were distributed and administered to Mr. Casagrande and the staff at The Palms in an effort to diagnose, mitigate, and prevent COVID-19, or the transmission of SARS-CoV-2 or a virus mutating therefrom.   Further, Defendant's employees and affiliates were acting as employees of a "program planner" that supervised and administered the infection control program that provided and administered FDA approved countermeasures to Mr. Casagrande and the staff of the Facility in an effort to diagnose and mitigate COVID-19, or the transmission of SARS-CoV-2 or a virus mutating therefrom. *See id.*

42.    Defendant's employees and affiliates in this action also were acting as "qualified persons" under 42 U.S.C. § 247d-6d because its employees were authorized to administer, deliver, and use FDA covered countermeasures, such as PPE and FDA approved COVID-19 devices and diagnostic tests, to diagnose and prevent COVID-19, or the transmission of SARS-CoV-2 or a virus mutating therefrom. *See AO 20-04.*

43.    Defendant was engaged in the management and operation of countermeasure programs in an effort to diagnose and prevent COVID-19, or the transmission of SARS-coV-2 or a virus mutating therefrom to a "population" and within a "geographic area" specified by the Declaration Under the PREP Act for Medical Countermeasures Against COVID-19, 85 Fed. Reg. 15198 (Mar. 17, 2020) and all amendments thereto -- or reasonably believed so by Defendant.

44.    The infection control program administered by Defendant constituted engagement in "recommended activities" for "covered countermeasures" during the COVID-19 global pandemic and national health emergency, as such terms are defined in the PREP Act.

**b.  PREP Act Immunity Extends To A Covered Person's Failure To Act Or Inaction.**

45.    The PREP Act provides, in pertinent part, that:

13

261997029.v1

"Subject to the other provisions of this section, a covered person shall be immune from suit and liability under Federal and State law with respect to all claims for loss caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure if a declaration under subsection (b) has been issued with respect to such countermeasure."

42 U.S.C. § 247d-6d(a)(1) (emphasis added). The PREP Act further provides that immunity "applies to any claim for loss that has a causal relationship with the administration to or use by an individual of a covered countermeasure, including a causal relationship with the design, development, clinical testing or investigation, manufacture, labeling, distribution, formulation, packaging, marketing, promotion, sale, purchase, donation, dispensing, prescribing, administration, licensing, or use of such countermeasure." 42 U.S.C. § 247d-6d(a)(2)(B).

46. AO 21-01 rejects the notion that immunity under the PREP Act requires actual "use" of a covered countermeasure. Specifically, AO 21-01 provides that "this 'black and white' view clashes with the plain language of the PREP Act, which extends immunity to *anything* '*relating to*' the administration of a covered countermeasure." *See* AO 21-01 (citations omitted) (emphasis added)).

47. AO 21-01 further provides that "[p]rioritization or purposeful allocation of a Covered Countermeasure, particularly if done in accordance with a public health authority's directive, can fall within the PREP Act and this Declarations liability protections. ***There can potentially be other situations where a conscious decision not to use a covered countermeasure could relate to the administration of the countermeasure.***" *See* AO 21-01 (emphasis added).

48. Additionally, AO 21-01 explains that "program planners" fall within the set of "covered persons" under the PREP Act and that "decision-making that leads to the ***non-use of covered countermeasures by certain individuals is the grist of***

14

NOTICE OF REMOVAL

***program planning, and is expressly covered by PREP Act.*** " *See* AO 21-01 (emphasis added).

49. The implementing Declaration also expressly addresses inaction, as the Secretary defined "administration" of covered countermeasures to include not only physical use, but ***non-use***, such as activities and decisions, as well as management and operation, of countermeasure programs generally. This distinction makes "explicit that there can be situations where ***not*** administering a covered countermeasure to a particular individual can fall within the PREP Act and this Declaration's liability protections." 85 Fed. Reg. 79190 (emphasis added).

50. Because Defendant is a Covered Person and because Plaintiffs' allegations all concern Defendant's conscious decisions to use or not use covered countermeasures, including "implementing policies and procedures relating to infectious diseases" and PPE, Plaintiffs' claims squarely fall within the PREP Act.

51. As confirmed in AO 21-01, when the PREP Act is triggered, complete preemption attaches. Indeed, "[t]he *sine qua non* of a statute that completely preempts is that it establishes either a federal cause of action, administrative or judicial, as the only viable claim or vests exclusive jurisdiction in a federal court. The PREP Act does both." *See* AO 21-01.

52. Despite Plaintiffs' assertion of state law claims, the doctrine of complete preemption is invoked and jurisdiction over these claims is exclusively federal. *See Beneficial Nat. Bank v. Anderson*, 539 U.S. 1, 8 (2003) ("When the federal statute completely preempts the state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law.").

53. Because the allegations in Plaintiffs' First Amended Complaint in conjunction with Plaintiffs' verified discovery responses and portions of their Case Management Statement invoke the PREP Act, this action is subject to removal under the doctrine of complete preemption.

1

2

## V.    FEDERAL QUESTION JURISDICTION EXISTS PURSUANT TO THE *GRABLE* DOCTRINE.

3

4

5

54.    In addition to complete preemption, AO 21-01 confirms that the PREP Act confers separate, independent grounds for federal question jurisdiction under the *Grable* doctrine. *See* AO 21-01.

6

7

8

9

10

11

12

55.    AO 21-01 confirms that "ordaining the metes and bounds of PREP Act protection in the context of a national health emergency necessarily means that the case belongs in federal court." AO 21-01 highlights the Secretary's conclusion in the Declaration that "there are substantial federal legal and policy issues, and substantial federal legal and policy interests within the meaning of [the *Grable* doctrine] in having a unified, whole-of-nation response to the COVID-19 pandemic among federal, state, local, and private-sector entities." AO 21-01 (quoting 85 Fed. Reg. at 79, 197(col. c)).

13

14

15

16

17

18

19

20

56.    The Advisory Opinion's interpretation of *Grable* is consistent with the Supreme Court's long-standing rule "that in certain cases federal question jurisdiction will lie over state-law claims that implicate federal issues." *Grable & Sons Metal Prod., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005). "The doctrine captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." *Id.*

21

22

23

24

25

26

27

57.    The *Grable* Court determined that no single, precise test exists for determining whether an embedded federal issue exists, but that, in general, a two-step process exists for determining whether a state law claim "arises under" federal law: (1) the state law claim must necessarily raise a stated federal issue that is actually disputed and substantial; and (2) federal courts must be able to entertain the state law claims "without disturbing a congressionally approved balance of state and federal judicial responsibilities." 545 U.S. at 314.  Here, both prongs are satisfied.

28

NOTICE OF REMOVAL

58.     First, Plaintiffs bring claims as a result for Defendant's alleged use or administration (or nonuse or nonadministration) of covered countermeasures in connection with the care and treatment of Mr. Casagrande, which necessarily implicates disputed and substantial federal issues.  *See* 42 U.S.C. § 247d-6d.

59.     Second, as confirmed by the Advisory Opinion and the Declaration, the PREP Act expresses a clear intention to supersede and preempt state control of the very issues raised by Plaintiffs, *i.e.*, issues concerning Defendant's conscious decisions to use or not use covered countermeasures, including the use or non-use of PPE.  A substantial and disputed federal issue regarding the application of the PREP Act to Plaintiffs' claims therefore necessarily exists, and must be resolved by this Court to ensure the uniform and appropriate application of the PREP Act.

60.     Courts have long recognized federal jurisdiction under the *Grable* doctrine.  *See, e.g., McKay v. City & Cty. of San Francisco,* No. 16-CV-03561 NC, 2016 WL 7425927, at *4 (N.D. Cal. Dec. 23, 2016) (finding federal jurisdiction under *Grable* where plaintiff's request that court enjoin use of flight paths was "tantamount" to a challenge to the validity of an FAA decision); *Bender v. Jordan,* 623 F.3d 1128, 1131 (D.C. Cir. 2010) (finding federal jurisdiction under *Grable* where breach of contract action arose under federal law because agreement was required by federal law and turned on interpretation of federal regulations).

61.     The two-step process is also satisfied where the alleged dispute "could have" supported the defendant's assertion of a federal declaratory judgment action. *See Hollyvale Rental Holdings, LLC v. Baum,* No. 216CV02888RFBPAL, 2018 WL 1608411, at *3 (D. Nev. Mar. 31, 2018) (*Grable* federal question jurisdiction existed under the "coercive action" doctrine where defendant "could have … brought a separate federal declaratory judgment action ….").

62.     The *Grable* doctrine and PREP Act are therefore directly applicable to Plaintiffs' claims and support this Court's jurisdiction.

17

NOTICE OF REMOVAL

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**WHEREFORE,** having shown that this case is properly removable, Defendant provides notice pursuant to 28 U.S.C.A. § 1446 that the Action pending in Superior Court for the County of Riverside, California, Case No. PSC2003000, is removed to the United States District Court for the Central District of California, Eastern Division, and respectfully requests that this Court exercise jurisdiction over this case.

Dated:  February 5, 2021                    CLARK HILL LLP


                                            By:   /s/ Michael P. West
                                                  _____
                                                  Michael P. West

                                            Attorneys for Defendant
                                            HAWTHORN SENIOR LIVING, LLC

NOTICE OF REMOVAL

**CERTIFICATE OF SERVICE**

I hereby certify that on this 5th day of February, 2021, I will electronically file the foregoing with the Clerk of the Court using the CM/ECF system, which will then be sent Electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent by first class mail to any counsel of record indicated as non-registered participants.

Dated: February 5, 2021                 /s/ Michael P. West
                                                      Michael P. West

                                                      *Attorneys for Defendant*
                                                      HAWTHORN SENIOR LIVING, LLC

**Attorney for Bert Casagrande:**

Steven C. Peck, Esq.
Adam J. Peck, Esq.
PECK LAW GROUP, APC
6454 Van Nuys Boulevard, Suite 150
Van Nuys, California 91401
Phone:        (818) 908-0509
Fax:          (818) 643-4980
E-mail: adampeck@thepecklawgroup.com
E-mail: stevenpeck@thepecklawgroup.com

262010123.v1